UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | Bankruptcy Case |
| ) | No. 08-61630-fra13 |
| JANICE SMITH-CANFIELD, ) | |
| ) | |
| Debtor. ) | |
| ) | Adversary Proceeding |
| JANICE SMITH-CANFIELD, ) | No. 09-6327-fra |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| MICHAEL SPENCER, ) | |
| ) | MEMORANDUM OPINION[1] |
| Defendant. ) | |

The case came on for trial in Medford, Oregon on December 13, 2010.

## I. FACTS

Defendant is an attorney, practicing in Klamath Falls, Oregon for 27 years. His practice includes preparing bankruptcy petitions for debtors, and real estate transactions. He was, as we shall see, also a real estate broker. Plaintiff is a businesswoman residing in Klamath Falls, and is the Debtor in the underlying Bankruptcy case. This adversary proceeding arises out of the parties' professional relationship.

// // //

---

[1] This Memorandum Opinion is designated as not for publication.

Page 1 - Memorandum Opinion

On or about March 3, 2008, Plaintiff consulted with Defendant respecting relief under the Bankruptcy Code. At that time she had recently moved to Oregon from North Carolina. Before living in North Carolina she lived with her then-husband in Tennessee. Before the move to Oregon, Plaintiff was divorced from her husband and had sold the Tennessee marital residence. She found employment in Klamath Falls as comptroller of an automobile dealership. Her earnings there were approximately $8,000 a month.

At the time of her initial consultation, Plaintiff was living in an apartment. Defendant advised Plaintiff that she should buy a residence in order to take advantage of any available homestead exemption, and in order to reduce the amount of her income considered "disposable" under the Bankruptcy Code, and thus payable to creditors in any Chapter 13 plan.

It is not clear whether the parties discussed the homestead issue in any detail. Defendant testified that he stated that her "equity" would be exempt if she owned a home, but there was no exploration as to whether Plaintiff qualified for the Oregon homestead exemption.[2] Defendant testified that the most important benefit of acquiring a home pre-petition was the effect on the minimum payment she would have to make under a chapter 13 plan. He reasoned that the increased monthly expense of owning a home and making mortgage payments would be deducted from Plaintiff's income for the purpose of calculating the disposable income payable to creditors over the course of a Chapter 13 plan. Defendant testified that the savings - that is, reduced payments to creditors - amounted to $72,000 over the life of the plan.[3]

// // //

---

[2] From Debtor's list of prior addresses in her Statement of Financial Affairs, it is probable the applicable homestead exemption was North Carolina's which is $35,000. 11 U.S.C. § 522(b)(3)(A); N.C.G.S.A. § 1C-1601(a)(1). In any event, the Oregon homestead exemption under O.R.S. 18.395 was claimed in Plaintiff's Schedule C, not objected to, and thus allowed. Taylor v. Freeland & Kronz et. al., 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). Plaintiff's schedules revealed that her equity in the residence did not exceed $25,000.

[3] Had Plaintiff remained a tenant she still could have taken standard housing deductions as a reasonably necessary expense in her "disposable income" computation for plan purposes. See, 11 U.S.C. §§ 1327(b) and 707(b)(2); see also Lines 25A, 25B (noting $544 standard mortgage/rent expense) and 26 of Plaintiff's original and amended form B22C (Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income).

Page 2 - Memorandum Opinion

Having advised that buying a home was sound pre-bankruptcy planning, Defendant told Plaintiff he could further assist in the effort because he was a real estate broker. He quickly located a property on James Martin Ct. in Klamath Falls (the property), and arranged for financing. Plaintiff did not know at the time that shortly beforehand Defendant had been approached by a Mr. William Wohrman, who sought advice on foreclosing his trust deed on the property, then owned by a Mr. Shan Ferrier.

The parties inspected the property and observed some problems with the landscaping at the rear thereof. In particular, a cement block retaining wall had collapsed. Nevertheless, it was decided to go forward with the purchase. Financing -certainly problematic in light of Plaintiff's financial condition - was to be provided by Mr. Wohrman who had been contacted for that purpose by Defendant.

The contract of sale was prepared by Defendant, who used a form of Earnest Money and Sale Agreement commonly employed by real estate professionals. He included a provision that the seller, Mr. Ferrier, would rebuild the retaining wall. Despite his knowledge that Mr. Ferrier was himself in financial trouble, no provision was included to secure performance (such as a holdback of part of the purchase price). Defendant also included in the sales contract a provision which waived the right to have any inspections performed as a contingency to closing.

At this point the parties had different views of their relationship. Plaintiff insists that at all times and in all respects, Defendant was acting as her attorney. Defendant's view is that he was acting as an attorney only with respect to the bankruptcy petition (and, presumably, the prebankruptcy planning). He maintains his participation in the property's purchase was as a real estate licensee not an attorney.

Before the sale closed, Plaintiff and Defendant again inspected the property. It appeared to both of them that the retaining wall had been rebuilt. Believing that the repair condition had been satisfied, Plaintiff proceeded to close the sale on April 18, 2008. In doing so she acknowledged that all of her contingencies and conditions had been met. The purchase price was $225,000. Defendant was paid a commission of $5,625.[4]

// // //

---

[4] Defendant split a 5% commission ($11,250) negotiated by the listing broker Candice Sonerholm of Fisher Nicholson Realtors.

Mr. Wohrman's family trust provided the financing. In accord therewith, Plaintiff executed a $200,000 promissory note[5] and gave a trust deed on the property to secure her performance.

Plaintiff's Chapter 13 bankruptcy petition was filed on May 16, 2008. Her Chapter 13 plan was confirmed without objection. Plan confirmation re-vested all of the property of the estate in Plaintiff.[6] The plan provided for and the confirmation order allowed Defendant's attorney's fees for the entire case in the sum of $4,000 of which $1,000 had been paid by Defendant in early April. The $3,000 balance was paid over the early term of the plan out of the monthly payments Plaintiff made to the Chapter 13 Trustee.

By letter dated May 23, 2008, Plaintiff received notice from the City of Klamath Falls that the retaining wall was deficient. Specifically, the wall did not conform with the Klamath Falls Community Development Ordinances.[7] The notice required that a new wall be "engineered" and rebuilt at considerable expense. Unbeknownst to Plaintiff (and, it appears, Defendant) the same notice had been delivered to the seller, Mr. Ferrier before the sale closed. Plaintiff now faces fines of up to $100 a month until the wall is rebuilt.

## II. DISCUSSION

a) <u>Core v. Non-Core</u>:

Plaintiff brings claims for disgorgement of Defendant's attorney's fees and broker's commission under 11 U.S.C. § 329(b),[8] attorney and real estate broker malpractice, and attorney and broker breach of fiduciary duty. A threshold issue raised by the parties is whether I can enter a final judgment on the claims. The answer turns on whether the claims are "core" proceedings. If so I may enter a final judgment. If not, and the matters are only "related to" the bankruptcy case, because Defendant has objected to a final determination of

// // //

---

[5] Plaintiff had paid $25,000 down.

[6] See, 11 U.S.C. § 1327(b).

[7] The wall also failed to conform with the State of Oregon Dwelling (Residential) Specialty Building Code.

[8] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code.

Page 4 - Memorandum Opinion

the malpractice and fiduciary duty claims, as to those claims I must enter proposed findings of fact and conclusions of law for the District Court's de novo review. 28 U.S.C. § 157(c)(1) & (2).

"Core" matters are those "arising under" Title 11 or "arising in" a case under Title 11. 28 U.S.C. § 157(b)(1). A non-exhaustive list of "core" proceedings is set out in 28 U.S.C. § 157(b)(2)(A)-(P). A matter may be "core" even if state law affects the outcome. 28 U.S.C. § 157(b)(3). "A matter 'arises under' the Bankruptcy Code if its existence depends on a substantive provision of bankruptcy law, that is, if it involves a cause of action created or determined by a statutory provision of the Bankruptcy Code." Battle Ground Plaza, LLC v. Ray et. al. (In re Ray), 624 F.3d 1124, 1131 (9th Cir. 2010). Here there is no dispute Plaintiff's claim for disgorgement under § 329(b)[9] is a claim "arising under" Title 11, and thus I may enter a final judgment thereon.

// // //

---

[9] Section 329 provides:

> **a)** Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.
>
> **(b)** If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to--
>
> > **(1)** the estate, if the property transferred--
> >
> > > **(A)** would have been property of the estate; or
> > >
> > > **(B)** was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or
> >
> > **(2)** the entity that made such payment.

1   The claims for attorney and broker malpractice and breach of fiduciary duty are a closer call. Those
2   do not implicate a statutory provision of Title 11 and thus are not "arising under" matters. Thus to be "core"
3   they must be "arising in" matters. In Ray, supra, the Ninth Circuit Court of Appeals stated as follows:

> A proceeding 'arises in' a case under the Bankruptcy Code if it is an administrative matter unique to the bankruptcy process that has no independent existence outside of bankruptcy and could not be brought in another forum, but whose cause of action is not expressly rooted in the Bankruptcy Code.

Id. Despite the "could not be brought in another forum" language, the Ray court in citing with approval its earlier opinion, Harris v. Whitman (In re Harris), 590 F.3d 730, 737 (9th Cir. 2010), cert. den., 130 S.Ct. 3413 (2010) made clear that the sine qua non of "arising in" jurisdiction is whether the cause of action would have no existence outside of a bankruptcy case, not whether another forum could entertain it. Id. at 1133.[10]

Here, Defendant's advice to buy the property and consequent facilitation of the sale was in contemplation of Plaintiff filing bankruptcy. Whether claims for professional malpractice and breach of fiduciary duty against a debtor's attorney based on pre-petition acts associated with the bankruptcy case are "core" appears to be a matter of first impression in this District and Circuit. Other courts are split on the issue. Compare, Helbling v. Josselson (In re Almasri), 378 B.R. 550 (Bankr. N.D. Oh. 2007) (claim brought by Chapter 7 trustee against debtor's bankruptcy counsel for pre-petition acts involving preparation of debtor's schedules was non-core), with, Kaiser Group Holdings, Inc. v. Squire Sanders & Dempsey LLP (In re Kaiser Group Int'l, Inc.) 421 B.R. 1 (Bankr. D. Dist. Col. 2009) (prepetition advice to Chapter 11 debtor

---

[10] In Ray, the matter involved a breach of contract action (determined under state law) against the debtor and a third party arising post-Chapter 11 confirmation. The court found it lacked "core" (or for that matter "related to") jurisdiction. In contrast, in Harris, the debtor sued the Chapter 7 trustee and a third party in state court for breach of a settlement agreement reached during the Chapter 7 case's administration. The matter was removed to the bankruptcy court. The court's holding of "core" rested on the rationale that the matter could not have existed independent of the bankruptcy case, not whether or not it could have been brought in the state court forum. This reading is buttressed by the related doctrines of discretionary abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b). Both doctrines allow the bankruptcy court to refuse to consider a "core" matter, instead leaving such determination for a court in another forum. See e.g., Security Farms v. Int'l Brotherhood of Teamsters, 124 F.3d 999, 1009 (9th Cir. 1997) (abstention); Nilsen v. Neilson (In re Cedar Funding, Inc.), 419 B.R. 807, 820 (9th Cir. BAP 2009) (remand). This necessarily implies that other forums may in fact hear "core" matters.

Page 6 - Memorandum Opinion

addressing impending bankruptcy matters was core); Simmons v. Johnson, Curney & Fields, P.C. (In re Simmons), 205 B.R. 834 (Bankr. W.D. Tx. 1997) (same).

I concur with the Kaiser and Simmons courts. As noted in Kaiser, "[p]re-petition advice, when addressing the impending bankruptcy, falls within 'arising in' jurisdiction because it is inseparable from the bankruptcy and would not occur but for it." Kaiser, supra at 10. The Simmons court noted the importance of § 329 in its analysis. Simmons, supra at 841, n.4. That section protects a debtor from attorney overreaching, In re Addison, 2008 WL 1902429, *4 (Bankr. D. Or. 2008), and allows the court to examine attorney's fees incurred up to a year before the filing as to all matters "in contemplation of or in connection with the case." That matters under § 329 are "core" evidences a strong Congressional policy that bankruptcy court oversight of a debtor's attorney goes to the heart of the bankruptcy process. Such oversight should not end simply because a debtor bases her relief on state law theories. I thus conclude the attorney negligence and breach of fiduciary duty claims are "core."

      b) Negligence (Malpractice):

Plaintiff has alleged claims for both attorney and real estate broker malpractice. Defendant has argued he was not acting as Plaintiff's attorney in the property's purchase. I reject that argument. It is uncontested Plaintiff's purchase was at Defendant's suggestion as part of pre-bankruptcy planning. Defendant cannot simply remove his attorney hat and put on his broker hat when both he and Plaintiff went house-hunting. I find that Defendant in effect wore both hats during the material times. However, even were it true he acted only as broker in the property's purchase, he is still liable for malpractice.

In an action for professional malpractice, the plaintiff must plead and prove:

> (1) a *duty* that runs from the defendant to the plaintiff; (2) a *breach* of that duty; (3) a resulting *harm* to the plaintiff measurable in damages; and (4) *causation, i.e.,* a causal link between the breach of duty and the harm.
> (emphasis in original).

Pereira v. Thompson, 230 Or. App. 640, 654, 217 P.3d 236, 247 (2009) (quoting Stevens v. Bispham, 316 Or. 221, 227, 851 P.2d 556, 560 (1993)).

// // //

Page 7 - Memorandum Opinion

>By virtue of their relationship, an attorney owes a client a duty of care. In a legal negligence claim, the issue is whether the attorney violated the duty of care, which is to act as a reasonably competent attorney in protecting and defending the interests of the client.

Pereira, supra at 654, 217 P.3d at 247 (internal quotations and citations omitted).

With regard to brokers, their duties are spelled out by statute. Here the applicable duties for a buyer's agent are as follows:

>1) agent must disclose to the buyer and all principals and their agents involved in the transaction, material facts known by the buyer's agent and not apparent or readily ascertainable[11] to a party, ORS 696.810(2)(C);
>
>2) agent must exercise reasonable care and diligence, ORS 696.810(3)(A); and
>
>3) agent must advise the buyer to seek expert advice on matters related to the transaction that are beyond the agent's expertise, ORS 696.810(3)(e).

Proving breach in professional malpractice cases often requires expert evidence setting forth the appropriate standard of care owed and how the defendant failed to uphold that standard. Pereira, supra (internal citations omitted). However, expert testimony is not required if, without an expert's opinion, the factfinder is capable of deciding whether the professional's conduct was reasonable. Vandermay v. Clayton, 328 Or. 646, 655, 984 P.2d 272, 277 (1999).

Here, Plaintiff was initially confronted with a defective retaining wall on property which was being sold by someone Defendant knew was in financial distress. Under these circumstances Defendant had a duty to disclose what he knew of the seller, Mr. Ferrier's financial condition[12] and to advise Plaintiff of the risks of Mr. Ferrier's failure to make the required repairs. As Defendant did not have his own expertise in determining whether the retaining wall subsequently rebuilt was up to City Code, he also had a duty to advise Plaintiff to

---

[11] "Apparent" and "readily ascertainable" have their plain and ordinary meanings, those being respectively, capable of being easily perceived through the physical senses and easily discoverable; whether the information is of public record is not determinative. Terway v. Real Estate Agency, 223 Or. App. 501, 512-13, 196 P.3d 1022, 1028 (2008) (construing analogous duties of a seller's agent under ORS 686.805(2)(c)).

[12] Mr. Ferrier's financial condition was material because it affected his ability to properly rebuild the retaining wall and/or respond in damages for his failure to do so.

Page 8 - Memorandum Opinion

either have the rebuilt wall inspected before closing or to allow closing but include in the sale contract some form of security, such as a holdback in escrow until the repair work was done and certified. Given all the facts and circumstances, I do not need an expert to testify that these failures breached both the attorney and broker standards of care. I further find that such breaches proximately caused Defendant's damage, in that if the duties were met, Plaintiff would not be confronted with a still defective retaining wall.

c) Breach of Fiduciary Duty:

Although they oftentimes present overlapping facts, professional negligence and breach of fiduciary duty are separate causes of action. Pereira, supra at 652-54, 217 P.3d at 246-47. An action for negligence involves issues of competence, while an action for breach for fiduciary duty involves questions of loyalty. Id. at 655, 217 P.3d at 247. To establish a claim for breach of fiduciary duty a plaintiff must plead and prove (1) the existence of a fiduciary relationship, (2) breach of a fiduciary duty, and (3) that the "breach caused an identifiable loss or resulted in injury . . . ." Id. at 654, 217 P.3d at 247. Proof of breach need not be by expert testimony, Id at 655, 217 P.3d at 247, although I have received the testimony and report of Plaintiff's expert, attorney Michael Lewis.

As her attorney, Defendant was in a fiduciary relationship to Plaintiff. Id. Breach of duty is established by proof Defendant had a conflict of interest or was self-dealing. Id. at 654-55, 217 P.3d at 247. Defendant did not act solely as broker in the property's purchase. He gave legal advice at the least by recommending the transaction close to effectuate Defendant's pre-bankruptcy planning. The Oregon Rules of Professional Responsibility inform what Defendant's duties were. C.f. Tydeman v. Flaherty, 126 Or. App. 180, 188, 868 P.2d 755, 760 (1994) (fiduciary duties and those set out Disciplinary Rules may overlap); State ex. rel. Bryant v. Ellis, 301 Or. 633, 636, 724 P.2d 811, 812 (1986) (conduct proscribed by Disciplinary Rule may also violate an attorney's civil duty to another person). Here, two rules, Oregon RPCs 1.7 and 1.8, are implicated. See, OSB Formal Ethics Op., 2006-176 discussing same.

Oregon RPC 1.7(a) forbids an attorney from representing a client if the representation involves a current conflict of interest. A current conflict exists if "there is a significant risk that the representation of one or more clients will be materially limited by . . . a personal interest of the lawyer." Oregon RPC 1.7(a)(2).

Page 9 - Memorandum Opinion

Here, there was a significant risk that Defendant's representation would be materially limited by his interest in his real estate commission which was payable only if the sale closed and which would likely have exceeded any correlative legal fee.

Oregon RPC 1.8 forbids a lawyer from entering into a business transaction with a client or knowingly acquiring a "pecuniary interest adverse to a client." Defendant's prospective commission was an adverse pecuniary interest, particularly when it became clear the retaining wall was problematic.

Despite the "current conflict" the representation could have continued if among other things Plaintiff gave "informed consent,[13] confirmed in writing." Oregon RPC 1.7(b)(4). Similarly, the representation could continue despite the adverse pecuniary interest if among other things, Plaintiff was advised in writing of the desirability of seeking and was given a reasonable opportunity to seek the advice of independent legal counsel and then gave informed consent in a signed writing to the transaction's essential terms and Defendant's role therein, including whether he was representing Plaintiff in the transaction. Oregon RPC 1.8(a)(2) & (3). Plaintiff however was not advised in writing to seek independent legal counsel nor did she give "informed consent" to the transaction. In fact, at all material times during the property's purchase Plaintiff believed Defendant was acting as her attorney. Defendant was obliged from the outset to delineate his roles, which he did not do. Based on the above, Defendant had a current conflict of interest and an adverse pecuniary interest which were breaches of his professional and fiduciary duties.

These breaches proximately caused Plaintiff damage. If Defendant had advised Plaintiff it was desirable to seek independent counsel, she would have done so, at which point she would have been advised to insist that the retaining wall pass inspection by a licensed inspector before closing or alternatively to

---

[13] Under Oregon RPC 1.0 (g):

"Informed Consent" denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct. When informed consent is required by these Rules to be confirmed in writing or to be given in a writing signed by the client, the lawyer shall give and the writing shall reflect a recommendation that the client seek independent legal advice to determine if consent should be given.

Page 10 - Memorandum Opinion

negotiate a hold-back of a portion of the purchase price. Alternatively independent counsel could have advised Plaintiff to retain a different lawyer or different broker, one of whom would have given the above-noted advice. Either way, Plaintiff would not have been damaged by a defective retaining wall.

Likewise Plaintiff acting as broker (as opposed to an attorney) had a fiduciary duty of loyalty to Defendant, Sexton v. Kelley, 185 Or. 1, 200 P.2d 950 (1948); Prall v. Gooden, 226 Or. 554, 360 P.2d 759 (1961), breach of which supports a claim under Oregon law. Walker v. Woodworth, 160 Or. App. 636, 981 P.2d 1282 (1999). Based on the guidance provided by Pereira, I will treat such a claim separately from broker negligence. A buyer's agent has a duty "to disclose material facts known by the buyer's agent and not apparent or readily ascertainable to a party," ORS 696.810(2)(c), and to "disclose in a timely manner to the buyer any conflict of interest, existing or contemplated." ORS 696.810(3)(d). Defendant violated these duties as they relate to his loyalty in several respects. First, he knew Mr. Ferrier was in financial straits but failed to disclose this to Defendant. Further, as Defendant's interest in earning his commission presented a conflict in his duties as an attorney (as discussed above,) so did his interest in earning his attorney's fees present a conflict in his duties as broker. He did not however clearly delineate those roles or advise Plaintiff to seek the advice of another broker or attorney as to whether he should continue to act in his dual roles. The conflict deepens to the extent Defendant had any duty to Wohrman given Wohrman's interest in closing the sale.

d) <u>Damages</u>:

Plaintiff is entitled to those damages proximately caused by Defendant's negligence or breach of fiduciary duty. She has the burden to prove her damages. She claims the $4,000 she paid in attorney fees. Oregon Courts have recognized that compensation paid for advice which breaches a fiduciary duty may be ordered disgorged as an element of damages, Horton v. Whitehall, 121 Or. App. 336, 340-41, 854 P.2d 977, 980 (1993), and I hold such disgorgement is appropriate here. However, those damages are cumulative of the remedy I am imposing under § 329 as discussed in detail below. Plaintiff also argues Defendant's broker's commission which Plaintiff characterizes as an attorney's fee, is also an element of her damages. However, Defendant's commission came out of the listing broker's commission. There was no evidence Plaintiff paid

Page 11 - Memorandum Opinion

more for the property to absorb Defendant's commission. As such, I will not award the commission as damages.

Aside from fees and commissions, the major element of damages alleged and argued was the economic loss resulting from the defective retaining wall. Plaintiff's claims sound in tort. Generally, the measure of damages resulting from defective construction (or plans designing such construction) of an improvement to real property is the cost of repair or replacement, "whether the claim is couched in terms of tort or contract." Carter v. Wolf Creek Highway Water District, 54 Or. App. 569, 573, 635 P.2d 1036, 1038 (1981) (engineer malpractice claim) (emphasis added). "Only if the cost of repair is disproportionate [to the end to be attained] does the standard of difference . . . [between the value of the property as is and what it would have been worth had it been built in conformity] become applicable . . ." so as to prevent undue economic waste. Beik v. American Plaza Co., 280 Or. 547, 555-56, 572 P.2d 305, 310 (1977), (quoting McCormick, Damages, 647,650 § 168 (1935)).[14] Plaintiff argues I should award this latter measure, that being the difference in the purchase price and the property's fair market value. In this regard she testified the property was worth $50,000 less with the defective wall. As noted however, the normal measure is cost of repair or replacement. To come within the "difference in value" exception she must have proved the cost of repair would be disproportionate to the end to be attained, that is a retaining wall up to City Code. She failed to do so. At trial she only put on proof of a portion of the repair/replacement costs, those being the $5,266.30 she paid to Adkins Consulting Engineers, Inc. to assess the defective retaining wall and design and draft plans for a new one. There was no proof as to the major element of replacement costs, those being the costs to actually build a new wall.[15] As such, I have no basis to find a lack of proportionality. Plaintiff is thus not entitled to "difference in value," and is only entitled to the $5,266.30 in engineering costs as repair/replacement damages.

---

[14] Oregon courts have enunciated a similar measure of damages to real property by tortious conduct resulting in temporary injury (i.e. injury which is "reasonably susceptible to repair"). McCormick v City of Portland, 191 Or. App. 383, 390, 82 P.3d 1043, 1048-49 (2004)

[15] I excluded Plaintiff's proffered evidence on repair/replacement including her expert's estimation of the costs to repair/replace the wall.

Page 12 - Memorandum Opinion

e) <u>Section 329 Claim for Disgorgement</u>:

Plaintiff seeks disgorgement under § 329(b) of both the $4,000 attorney's fees and the $5,625 commission. In general § 329 provides an oversight function by allowing the bankruptcy court to review the reasonableness of a debtor's attorney's fees incurred in contemplation of or in connection with the bankruptcy case, up to one year before the petition date. Section 329 "seeks to prevent overreaching by debtor's attorneys and serves to counteract the temptation of a failing debtor to deal too liberally with his property in employing counsel to protect him in view of financial reverses and probable failure." <u>Addison</u>, supra at *4 (quoting <u>In Re Perrine</u>, 369 B.R. 571, 579-580 (Bankr. C. D. Cal. 2007) (internal quotation omitted)).

"Reasonableness" under § 329(b) is measured by § 330's standards. <u>American Law Ctr. PC v. Stanley (In re Jastrem)</u>, 253 F.3d 438, 443 (9th Cir. 2001). The court considers the nature, extent and value of services rendered taking into account all relevant factors including those set out in § 330(a)(3), and excluding those services described in § 330(a)(4)(A). If the compensation exceeds the reasonable value of the services, the court may cancel the agreement or order disgorgement of any fees, to the extent excessive, to the estate (if the fees would have been estate property or were to be paid under a Chapter ... 13 plan), or to the entity that paid the fees. § 329(b). In making its § 329 determination the court may consider whether the attorney had a conflict of interest when providing services. If so, the court has discretion to reduce or totally deny compensation. <u>Sanchez v. Gordon (In re Sanchez)</u>, 241 F.3d 1148, 1151 (9th Cir. 2001); <u>Briggs v. LaBarge (In re McGregory)</u>, 340 B.R. 915, 923 (8th Cir. BAP 2006). The court may also take into account violations of ethical standards and breaches of state law standards of care. <u>In re Sledge</u>, 352 B.R. 742, 747-48 (Bankr. E. D. N.C. 2006).[16]

---

[16] Section 329 also requires certain disclosures. Under § 329(a) any attorney representing a debtor must file a statement of "the compensation paid or agreed to be paid" for bankruptcy services if any payment or agreement was made within a year before bankruptcy, and "the source of such compensation." Attorneys must file this statement whether or not they apply to the court for compensation. The attorney "must disclose the precise nature of the fee arrangement, and not simply identify the ultimate owner of the funds." <u>Nebben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)</u>, 63 F.3d 877, 881 (9th Cir. 1995) (internal quotation omitted). "The disclosure rules are applied literally." <u>Id</u>. "Negligent or inadvertent omissions do not vitiate the failure to disclose." <u>Id</u>. (internal
(continued...)

Based on the above findings that Defendant breached his standard of care to Plaintiff's damage, and violated multiple ethical standards including providing services while he had a conflict of interest, I will order Defendant to disgorge the entire $4,000 in attorney's fees to Plaintiff.[17]

Conclusion:

A judgment awarding Plaintiff $5,266.30 in compensatory damages as well as ordering disgorgement of $4,000 in attorney's fees to Plaintiff within 30 days, will be entered. Plaintiff is also entitled to her reasonable costs and disbursements. The above constitutes my findings of fact and conclusions of law under FRBP 7052. They shall not be separately stated. Counsel for Plaintiff should submit a form of judgment consistent with the foregoing.

FRANK R. ALLEY, III
Chief Bankruptcy Judge

---

[16](...continued) quotation omitted). Failure to comply with the disclosure rules is sanctionable, "even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." Id. at 880. It is no excuse that the attorney received some or all of the fees from a third party. In re Addison, 2008 WL 1902429, *4 (Bankr. D. Or. 2008).

Plaintiff argues Defendant's broker commission was in reality an attorney's fee which among other reasons, should be disgorged because Defendant did not disclose it. Defendant argues the commission was compensation for realty not legal services. I need not decide this issue for the same reasons I am denying the amount of the commission as an element of damages. Even assuming the commission was an attorney's fee, I would not exercise my discretion under § 329(b) to order it disgorged. Defendant's commission came out of the listing broker's and she has not intervened in this proceeding requesting any relief.

[17] Confirmation of Plaintiff's Chapter 13 plan on October 20, 2008, had the effect of re-vesting in Plaintiff the estate's interest in the present claims against Defendant. See, § 1327(b).

Page 14 - Memorandum Opinion